```
                   UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW HAMPSHIRE
```

Julie Westerdahl and
Steven Westerdahl

    v.                                  Civil No. 10-cv-266-JL
                                        Opinion No. 2011 DNH 136
Bruce Williams


### MEMORANDUM ORDER

This negligence action arises out of a bicycle accident on Ocean Boulevard in Hampton, New Hampshire, in April 2009. Plaintiff Julie Westerdahl was riding her bicycle along the side of the road, to the right of the fog line, when a vehicle driven in the same direction by defendant Bruce Williams, entering a driveway, made a right-hand turn in front of her. Westerdahl managed to stop her bicycle in time to avoid colliding with Williams's vehicle but, in so doing, she fell to the ground, dislocating her shoulder. She has sued Williams to recover her resulting damages, including medical expenses, lost wages, loss of enjoyment of life, and pain and suffering, while her husband has joined with a claim for loss of consortium.

This court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) (diversity), because the Westerdahls are citizens of New Hampshire while Williams is a citizen of New York, and the amount in controversy exceeds $75,000. In Williams's final

pretrial filings, see L.R. 16.2(b)(3), (d), he objected to two pieces of evidence that Westerdahl intends to introduce at the upcoming jury trial: (1) testimony by Dr. W. Bradley White, who treated her for the injury she sustained in the accident, that he recommends she have corrective surgery to her shoulder, and that the surgery would cost as much as $30,000, and (2) a statement in the police report of the accident that it was caused by Williams's failure to yield and to exercise due care.[1]  Based on the parties' filings, and the arguments of their counsel at the preliminary pretrial conference, the court (1) sustains Williams's objection to Dr. White's proffered testimony and (2) denies Williams's motion in limine to exclude the officer's conclusion as to fault, without prejudice to Williams's ability to establish that the conclusion is untrustworthy by examining the officer at trial, outside of the presence of the jury.

1. **Dr. White's opinion**

Dr. White, an orthopedic surgeon, treated Westerdahl for her injuries in the wake of the accident, beginning two days afterwards, in April 2009, and continuing through December 2009.

---

[1] Williams has also moved to preclude Westerdahl from making any reference to the fact of Williams's liability insurance. Westerdahl does not object to that relief, which is granted. See Fed. R. Evid. 411.

Williams does not question that Dr. White can testify as to medical opinions he reached during the course of that treatment, insofar as those opinions are reflected in contemporaneous medical records. But Williams does object to Dr. White's testifying to conclusions set forth in a letter sent to Westerdahl's counsel, and forwarded to Williams's counsel, on June 7, 2011, to wit:

> [w]ere [Westerdahl] to have persistent mechanical symptoms then relatively simple arthroscopic management might well be helpful, whereas if she was having instability episodes arthroscopic management might well be possible . . . . For such procedures, which can both be done on an outpatient basis, the surgical fee would be between [$] 2.5-5K, and total charges from the hospital, on the order of [$] 20-30 K.
>
> I would consider her to have a 12% permanent partial impairment (upper extremity), which translates into a 7% whole person permanent partial impairment.

(certain parentheticals omitted). Williams argues that, because these opinions were not disclosed until well after the applicable deadline set forth in the scheduling order, Westerdahl should not be able to offer them at trial.

The scheduling order issued as the result of this court's approval of the parties' joint proposed discovery plan. See Fed. R. Civ. P. 26(f). Under the heading "Dates of Disclosure of Experts and Experts' Written Reports and Supplementation," the plan states, "Plaintiffs: January 1, 2011." In a letter to

Williams's counsel, dated February 8, 2011, Westerdahl's counsel stated that her "treating physicians will testify . . . . in accordance with the medical records." The letter further stated that their testimony would be "essentially limited to the fact that her treatment was reasonable and necessary" and "to her prognosis as indicated in the records and by her and that her current condition is permanent."

On June 1, 2011, the deadline for challenges to expert testimony, Williams filed a motion to preclude Westerdahl from "introducing expert opinion testimony as to diagnosis, prognosis, causation or permanence not contained within the four corners of medical records previously disclosed." Following an objection, a reply, and a sur-reply, this court denied the motion, observing that "Dr. White's role as a non-retained treating physician witness, and the subject matter of his testimony" had been disclosed to Williams in the February 8 letter, "barely one month after the deadline set forth in the Discovery Plan (if it even applied to non-retained experts)." Order of July 13, 2011 (document no. 14). Thus, the court ruled, any lateness in the disclosure had not prejudiced Williams. But the court also imposed limitations on the opinions that Dr. White could offer at trial: they had to be "(a) fairly discernible from Julie Westerdahl's medical records or otherwise based on opinions that

[he] formed in a reliable manner while examining and treating her; and (b) within the scope of opinions that a treating physician reasonably and normally would form during such examination and treatment." Id.

Prior to that order, but subsequent to the filing of the motion, Westerdahl's counsel provided Williams's counsel with Dr. White's June 7 letter, discussed supra, opining on the advisability of surgery depending on Westerdahl's present condition, the likely cost of that surgery, and Westerdahl's level of permanent impairment.[2] Williams argues that Westerdahl should not be able to offer any of those opinions at trial, because they were not disclosed until well after the January 1 deadline set forth in the scheduling order. Westerdahl counters that the deadline does not even apply to Dr. White, because he is a "treating physician," not a "retained expert."

Rule 26(a)(2)(B), by its terms, applies only to a witness "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." So this court has held--and

---

[2] Westerdahl later filed, as part of her final pretrial statement, an itemized list of her special damages, see L.R. 16.2(a)(6), that includes a charge in the amount of $29,000 for "Future Arthroscopic Surgery." The balance of Westerdahl's claimed special damages is roughly $18,000.

repeatedly reaffirmed--that "Rule 26(a)(2)(B) reports are not required as a prerequisite to a treating physician expressing opinions as to causation, diagnosis, prognosis and extent of disability where they are based on the treatment." Sprague v. Liberty Mut. Ins. Co., 177 F.R.D. 78, 81 (D.N.H. 1998) (Muirhead, M.J.); see also, e.g., Bartlett v. Mut. Pharm. Co., 742 F. Supp. 2d 182, 200 (D.N.H. 2010); Aumand v. Dartmouth Hitchcock Med. Ctr., 611 F. Supp. 2d 78, 87-89 (D.N.H. 2009).[3]

The self-contained limitation on this rule, however, is that such opinions must be "based on the treatment." Sprague, 177 F.R.D. at 81. So, as this court has explained, a plaintiff's treating physician may testify to an expert opinion, even in the absence of a report, "provided that [he or she] reached that conclusion in a reliable manner while examining and treating" the

---

[3] There are other disclosure requirements that apply to treating physicians: the party seeking to offer their expert opinion testimony must disclose their identities, see Fed. R. Civ. P. 26(a)(2)(A); Aumand, 611 F. Supp. 2d at 88, as well as "the subject matter" of that testimony and "a summary of the facts and opinions to which the expert is expected to testify," Fed. R. Civ. P. 26(a)(2)(C). Williams does not question that Westerdahl complied with these requirements through her counsel's letter of February 7. Insofar as Williams argues that this disclosure was untimely, coming after the "Dates of Disclosure of Experts and Experts' Written Reports and Supplementation" set forth in the discovery plan, it is not clear from the plan that this deadline even applies to non-retained experts and, even if it did, Westerdahl missed it by just over a month, which was harmless. See Order of July 13, 2011 (document no. 14).

plaintiff.  Bartlett, 742 F. Supp. 2d at 200.  But, in the absence of a report, a plaintiff's treating physician cannot testify to opinions based on "'information not learned during the course of treatment,'" e.g., information contained in a hypothetical posed by counsel.  Vosburgh v. Bourassa, 2008 DNH 133, 5-8 (McAuliffe, C.J.) (quoting Ngo v. Std. Tools & Equip. Co., 197 F.R.D. 263, 267 (D. Md. 2000)).

This distinction was recently elucidated by the court of appeals (albeit with reference to an exterminator, rather than a physician, whose services the plaintiffs allegedly needed as a result of the defendant's tortious conduct):

> where . . . the expert is part of the ongoing sequence of events and arrives at his . . . opinion during treatment, his opinion testimony is not that of retained or specially employed expert.  If, however, the expert comes to the case as a stranger and draws the opinion from facts supplied by others, in preparation for trial, he reasonably can be viewed as retained or specially employed for that purpose, within the purview of Rule 26(a)(2)(B).

Downey v. Bob's Discount Furniture Holdings, Inc., 633 F.3d 1, 7 (1st Cir. 2011).  The court went on to recognize that, under this rubric, "an on-the-scene expert whose views are not subject to the written report requirement of Rule 26(a)(2)(B) might also be retained or specially employed to develop <u>additional</u> opinions for purposes of trial (and would, to that extent, trigger the written report requirement)."  Id. at 8 n.5; see also Vosburgh, 2008 DNH

133, 7-8 (ruling that, without a report, a treating physician could testify as to "his diagnosis and treatment of plaintiff," but not the cause of plaintiff's condition, because that was not based on his "examination and treatment of plaintiff").[4]

That aptly describes Dr. White's role here. In the course of treating Westerdahl for her injuries following the accident, he reached certain opinions about her condition that, presumably, are reflected in her contemporaneous medical records. Williams has not questioned that Dr. White may testify to those opinions at trial and, indeed, this court previously ruled that he could. Order of July 13, 2011 (document no. 14). Williams does challenge, however, the opinions set forth in Dr. White's June 7 letter, i.e., that Westerdahl's present condition might indicate surgery, that it could cost as much as $29,000, and that her levels of permanent impairment are 12% in her upper extremity and 7% overall. There is no indication Dr. White reached those opinions in the course of treating Westerdahl.

To the contrary, as Williams has pointed out, in Dr. White's note of one of Westerdahl's last visit to him, in September 2009,

---

[4] Indeed, this court drew the same distinction in its prior order on Dr. White's opinions, ruling that they were admissible only insofar as they were reflected in her medical records or "otherwise based on opinions that [he] formed in a reliable manner while examining and treating" Westerdahl. Order of July 13, 2011.

he stated, "I do not see enough to recommend any sort of surgical procedure and only if she were to develop true mechanical symptoms or recurred instability but [*sic*] I would be comfortable recommending surgery."[5]  Dr. White also stated his expectation that Westerdahl "will continue to improve [as] regards her range/function and hope that by the 1-2 year mark she will tolerate all activities without significant residual symptoms." This makes clear that Dr. White had not concluded that Westerdahl needed (or would need) surgery, or was (or would become) disabled, by the time he stopped treating her--and that any opinion on those subjects he has now is necessarily the result of information he learned since then.  Accordingly, Westerdahl ordinarily could not offer those opinions at trial unless she had provided Williams with an expert report stating them and containing the other information required by Rule 26(a)(2)(B). See Downey, 633 F.3d at 8 n.5; Bartlett, 742 F. Supp. 2d at 200; Vosburgh, 2008 DNH 133, 7-8.

   That is "ordinarily" the case, because there are a few qualifications.  First, Rule 26(a)(2)(B) enables the parties to

---

[5] In a note of Westerdahl's last visit to him, on December 30, 2009, Dr. White wrote, "[g]iven her time frame, I don't expect she would want to consider major capsular labral reconstruction, but she might simple/scope debridement versus activity modification."

stipulate to forms of expert disclosures other than the formal reports envisioned by the rule.  The parties did so here, requiring, in relevant part, only "a brief summary of the expert's education and experience relevant to his or her area of expertise" and "a report containing a summary of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion."  Westerdahl does not claim to have provided anything approaching that until June 7, 2011, when her lawyer forwarded Dr. White's letter to Williams's lawyer. She argues that this was timely because, under Rule 26(b)(2)(D)(I), expert reports need not be made until 90 days before trial.  But this is the default deadline that applies "[a]bsent a stipulation or a court order," and, here, the parties' joint discovery plan, which the court later adopted as its scheduling order, listed January 1, 2011, as the "Date[] of Disclosure of Experts and Experts' Written Reports and Supplementation" for the plaintiffs.  Though Westerdahl has gamely suggested otherwise, the only possible import of this provision is to set January 1, 2011, as the deadline for the plaintiffs to provide their expert reports.

    Second, when a party "fails to provide information . . . as required by Rule 26(a)," a party is "not permitted to use that

. . . information . . . at a trial unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). So, as the court of appeals has stated, "the baseline rule is that the required sanction in the ordinary case is mandatory preclusion" of late-disclosed information. Harriman v. Hancock County, 627 F.3d 22, 29 (1st Cir. 2010) (quotation marks and bracketing omitted). In deciding whether to impose that remedy, the court of appeals has endorsed considering "an array of factors," including "the sanctioned party's justification of the late disclosure; the opponent-party's ability to overcome its adverse effects (i.e., harmlessness); the history of the litigation; the late disclosure's impact on the district court's docket; and the sanctioned party's need for the precluded evidence." Id. (citing Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 76 (1st Cir. 2009)).

Here, none of these factors suggests that this court should eschew the "baseline rule" and impose any remedy other than precluding Dr. White's challenged testimony. Westerdahl has not offered any justification for waiting until June 7, more than six months after her expert disclosure deadline, to provide Williams with notice of the challenged opinions. The late disclosure was not harmless, because it came after the discovery cutoff and the deadline for Williams to designate his own medical expert if he

so chose.[6] Moreover, the late disclosure included an opinion that, if allowed, could potentially more than triple the amount of special damages recoverable by Westerdahl at trial. See note 2, supra. While neither the history of the litigation (Williams does not suggest that Westerdahl has missed other deadlines in the case) nor the late disclosure's impact on this court's docket (aside from the fact that, to overcome the prejudice caused by the late disclosure, Williams would likely have to avail himself of measures that could necessitate a continuance of the trial, see note 6, supra) weighs heavily, if at all, in favor of preclusion, those factors likewise do not weigh against it.

Finally, although depriving Westerdahl the use of Dr. White's challenged opinions figures to limit her recoverable

---

[6]Westerdahl argues that she nevertheless offered to produce Dr. White for deposition before trial (he had not been deposed during the discovery period) which would have eliminated any prejudice to Williams. While this may be the appropriate remedy for the late disclosure of expert testimony in some circumstances, resorting to it in every such case would effectively turn court-ordered expert disclosure deadlines into "merely aspirational" guidelines, against the counsel of the court of appeals. Lohnes v. Level 3 Commnc'ns, Inc., 272 F.3d 49, 60 (1st Cir. 2001). Indeed, "[i]f continuances were granted as a matter of course for violations of [scheduling orders], [they] could always be disregarded with impunity." Thibeault v. Square D Co., 960 F.2d 239, 246 (1st Cir. 1992); cf. Young v. Gordon, 330 F.3d 76, 83 (1st Cir. 2003) (upholding dismissal of the case as a sanction for plaintiff's failure to attend his own deposition, even though he had eventually appeared and the deposition had already started by the time counsel learned of the dismissal order).

damages, as just discussed, it will not "obviously or automatically result in dismissal" of her case, so her need for the evidence does not weigh strongly against preclusion either. See Harriman, 627 F.3d at 32. After due consideration of the applicable factors, this court finds that preventing Westerdahl from offering Dr. White's challenged opinions (as to her need for surgery, its likely cost, and the level of her permanent disability) is the appropriate remedy for her late disclosure of them. See id.; see also, e.g., Adams v. J. Meyers Builders, 671 F. Supp. 2d 262, 269-70 (D.N.H. 2009). Dr. White will not be permitted to give those opinions at trial.

2. **The investigating officer's conclusion as to fault**

Williams has moved to exclude the conclusion of the officer who investigated the accident, William Adams, as to its cause. Adams wrote in his police report that "it appears [Williams] failed to yield to [Westerdahl] and exercise due care before making his right turn" (capitalization omitted). Williams argues that this conclusion is untrustworthy and therefore inadmissible under Rule 803(8)(C) of the Federal Rules of Evidence, which recognizes an exception to the hearsay rule in civil actions for reports setting forth "factual findings made pursuant to authority granted by law, unless the sources of information or

other circumstances indicate lack of trustworthiness." He bases this argument on purported deficiencies in Adams's investigation that came to light during his deposition, including, principally, his failure to recognize that a skid mark left by Westerdahl's bicycle at the scene could have indicated that she had been traveling at an unsafe speed just prior to the accident.

Williams's motion appropriately recognizes that the Federal Rules of Evidence govern the admissibility of Adams's conclusion here. See, e.g., Fitzgerald v. Expressway Sewerage Constr., Inc., 177 F.3d 71, 74 (1st Cir. 1999). Yet the motion cites New Hampshire case law for the propositions that (1) a court "properly exclude[s] the conclusions of a police officer who is not an accident reconstructionist and ha[s] not investigated many accidents," and (2) courts "routinely exclude opinions of police officers where they require a mixed question of law and fact." Even if these are correct as matters of New Hampshire law, however (which this court need not decide because, again, it is federal evidence law that applies in this court) the controlling federal case law on Rule 803(8)(C) does not impose such requirements.

Taking Williams's second point first, the United States Supreme Court has squarely held "that portions of investigatory reports otherwise admissible under Rule 803(8)(C) are not

inadmissible merely because they state a conclusion or opinion." Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 170 (1988). So the fact that, under New Hampshire evidentiary law, "the opinions of a police officer on fault and causation [of an accident], which are mixed questions of fact and law, must be excluded," Johnston ex rel. Johnston v. Lynch, 133 N.H. 79, 88 (1990), has no bearing on the admissibility of Williams's conclusion as to fault and causation under federal evidentiary law.

As to Williams's first point, the court of appeals has held that "an initial presumption of admissibility" attaches to an officer's accident report, including its conclusions, so long as it is based on his or her factual investigation. Lubanski v. Coleco Indus., Inc., 929 F.2d 42, 45-46 (1st Cir. 1991). The court did not adopt any uniform approach or rule, such as the one Williams believes to exist under New Hampshire law, requiring the officer to be qualified as an accident reconstructionist or, for that matter, to have conducted his or her investigation in any particular way. Id.

This is not to say, of course, that factors such as the investigating officer's qualifications, or his methodology, are irrelevant to whether his or her report, including any conclusion it expresses, is trustworthy and therefore admissible under Rule

803(8)(C).[7]  See Fed. R. Civ. P. 803(8) advisory committee's note (1974) (citing "the special skill or experience of the official" as among "the factors to be considered" in assessing trustworthiness).  It is just that federal law does not absolutely demand such qualifications as a condition of admissibility.[8]  To the contrary, as <u>Lubanski</u> observes, most federal courts have adopted a "broad interpretation" of Rule 803(8)(C) that favors admitting an investigating officer's conclusions.  929 F.2d at 45 (citing cases).

Taking this approach here, this court denies Williams's motion to exclude Adams's conclusion as to the cause of the

---

[7]Federal case law is divided on whether a conclusion set forth in a public report is inadmissible unless its author would be qualified to render the opinion under Rule 702 of the Federal Rules of Evidence.  <u>See</u> 5 Jack B. Weinstein & Margaret A. Berger, <u>Weinstein's Federal Evidence</u> § 803.10[4][a], at 803-100--803-101 (Joseph G. McLaughlin, ed., 2d ed. 1999 & 2010 supp.); <u>see also</u> Aumand, 611 F. Supp. 2d at 85-86 (discussing similar split of authority as to opinions in business records admissible under Rule 803(6)).  While the court of appeals has not squarely addressed this issue, its opinion in Lubanski strongly suggests that it would not superimpose the Rule 702 requirements on to a conclusion in a public record; indeed, the court's opinion contains no discussion of the officer's qualifications or methodology, yet holds that the district court erred by excluding his report "pro forma."  929 F.2d at 46.

[8]Despite Williams's suggestion to the contrary, neither does New Hampshire law.  <u>See</u> Carignan v. Wheeler, 153 N.H. 465, 468 (2006) ("there is no requirement that a police officer be an expert in accident reconstruction or have investigated a large number of accidents" for a conclusion from from his or her report to be admitted).

16

accident.[9]  While the motion sets forth arguable shortcomings in Adams's investigation, those shortcomings, as just discussed, do not render his conclusion untrustworthy under Rule 803(8)(C).  This ruling, however, is without prejudice to Williams's ability to challenge the trustworthiness of Adams's conclusions at trial, by examining him outside of the presence of the jury.

For the foregoing reasons, Williams's motion in limine to exclude reference to his liability insurance[10] is GRANTED as unopposed, his motion in limine to exclude Adams's conclusion as to fault[11] is DENIED without prejudice as just explained, and his objection to Dr. White's challenged opinions is SUSTAINED.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  September 7, 2011

---

[9]It is unclear from the parties' submissions whether Westerdahl intends to elicit an opinion as to the cause of the accident from Williams at trial.  It seems clear, though, that he would not be qualified to do so.  See Fed. R. Civ. 702.  While the court realizes that this presents a bit of a paradox--that an officer's opinions as to causation or fault would be inadmissible when offered from the witness stand but admissible when offered through his or her police report--it is a paradox that the controlling caselaw seems to tolerate, as just discussed.

[10]Document no. 19.

[11]Document no. 20.

```
cc:   Andrew D. Dunn, Esq.
      Elsabeth D. Foster, Esq.
      Thomas J. Fay, Esq.
```